JOHN G. M'DONALD, PLAINTIFF IN ERROR *vs.* GEORGE B. MA-
GRUDER, DEFENDANT.

A note was discounted at the office of discount and deposit of the bank of
the United States in the city of Washington, for the accommodation of the
drawer, indorsed by Magruder and by M'Donald; neither of the indorsers receiv-
ing any value for his indorsement, but indorsing the note at the request of the
drawer, without any communication with each other. The note was renewed
from time to time, under the same circumstances, and was at length protested
for non-payment : and separate suits having been brought by the bank against
the indorsers, the drawer being insolvent, judgments in favour of the bank were
obtained against both the indorsers. The bank issued an execution against
Magruder, the first indorser, and he having paid the whole debt and costs,
instituted this suit against M'Donald, the second indorser, for a contribution,
claiming one half of the sum so paid by him in satisfaction of the judgment
obtained by the bank. Held, that he was not entitled to recover.

That a prior indorser is, in the regular course of business, liable to his indorsee,
although that indorsee may have afterwards indorsed the note, is unquestiona-
ble. When he takes up the note he becomes the holder as entirely as if he
had never parted with it, and may sue the indorser for the amount. The first
indorser undertakes that the maker shall pay the note, or that he, if due dili-
gence be used, will pay it for him. This undertaking makes him responsible
to every holder, and to every person whose name is on the note subsequent to
his own, and who has been compelled to pay its amount. [474]

The indorser of a promissory note, who receives no value for his indorsement
from a subsequent indorser, or from the drawer, cannot set up the want of con-
sideration received by himself; he is not permitted to say that the promise is
made without consideration ; because money paid by the promissee to another,
is as valid a consideration as if paid to the promissor himself. [476]

Co-sureties are bound to contribute equally to the debt they have jointly under-
taken to pay ; but the undertaking must be joint, not separate and successive.
[477]

ERROR to the circuit court of the county of Washing-
ton, in the district of Columbia.

This was an action of assumpsit, instituted in the circuit
court by the defendant in error against the plaintiff in this
court. The matters in controversy were submitted to the
jury by a case agreed, which stated, that the plaintiff pro-
duced in evidence a promissory note drawn by Samuel Tur-
ner, Jun. in favour of George B. Magruder, or order, at sixty
days, for $900, payable at the office of discount and deposit
at Washington, for value received ; which note was signed by

[M'Donald *vs.* Magruder.]

Samuel Turner, and indorsed by George B. Magruder, and by John G. M'Donald.

The note was so drawn and indorsed, with the understanding of all the parties thereto, that it should be discou ed in the office of discount and deposit, for the sole use and accommodation of the maker, Samuel Turner; no value being received by either of the indorsers. It was so discounted, and the proceeds thereof applied to the credit of Turner, in the office. Long before the making of the note, viz. in the year 1819, Turner had two notes discounted for his use and accommodation in the office, viz. one for $270, indorsed by George B. Magruder and by G. M'Donald, and one for $710, indorsed by George B. Magruder and one Samuel Hambleton; which last mentioned note was continued, by renewal, with the indorsement of Magruder and Hambleton, until September 1820, when, in consequence of Hambleton's absence, it was protested; after which the office permitted the accommodation to be renewed, upon condition that Turner would get another good indorser in the place of Hambleton. Whereupon John G. M'Donald, upon the solicitation of Turner, indorsed a note for the sum of $710, which was brought to him, already indorsed by George B. Magruder. That in March 1821, a small part of the money having been paid, the two notes were consolidated and renewed by one note for $950, drawn by Turner, and indorsed by Magruder and by M'Donald, which was from time to time renewed by notes similarly drawn and indorsed; the last of which is this note, so produced in evidence by the plaintiff. Neither at the time of indorsing the notes respectively, nor at any other time, was there any communication between Magruder and M'Donald upon the subject of such indorsement. Both of them however knew at the time of indorsement the notes were intended to be discounted for the accommodation of Turner; and in every instance Magruder was the first indorser. The note, so produced in evidence by the plaintiff, not having been paid when due, was duly protested; and the payment thereof having been duly demanded, and due notice given of such demand, and of non-payment having been

given to the indorsers, judgments at law were recovered against both, by the Bank of the United States; and the whole amount having been paid by Magruder, he brought this suit to recover from M'Donald one half of the amount so paid by him.

By consent of the parties, a verdict was rendered for the plaintiff, for one half of the amount so paid by the said Magruder, in satisfaction of the judgment against him; subject to the opinion of the court upon the case agreed.

Upon the case stated, the court below gave judgment for the plaintiff; and the defendant sued out this writ of error.

Mr Jones, for the plaintiff in error, contended,

1. That by the showing of the plaintiff himself, in the case stated, there never was any contract between the parties, but what their several indorsements on the note import.

2. That the import and effect of the contract of indorsement, the only contract between the parties, and that not attempted to be explained or modified by any collateral agreement or understanding whatever, were that the plaintiff himself, as first indorser and payee of the note, should pay and satisfy the whole amount of the note, in default of the maker, and should completely indemnify and save harmless the defendant, as last indorser, against all recourse from the holder. Consequently, if the bank had chosen to enforce the separate judgment which they had recovered against the last, instead of the first indorser, the former would have been entitled to recover of the latter, not a moiety, but the whole of the amount.

3. That this, the legal effect of the only contract subsisting between the parties, so far from being changed or impaired, is confirmed and strengthened by the origin and circumstances of the debt, as explained in the case stated; from which it appears, that near three-fourths of the amount consisted of a prior debt due from the plaintiff to the bank, for which M'Donald never was liable, till he made himself so, as indorsee of the plaintiff below, and as second indorser.

This action was brought by the first indorser against the second indorser of a promissory note, for contribution, he

[M'Donald *vs.* Magruder.]

having paid the note to the holder. There never was any contract between the parties but that which appears on the face of the note. In the true sense of this agreement, Magruder promises to pay the note in case of the failure of the drawer to do so, and to save the subsequent indorser, the plaintiff in error, harmless. There is nothing collateral to this agreement; were it necessary or proper to go into any inquiry as to the real circumstances of the parties, three-fourths of the sum received on the discount of the note were for Magruder's use.

The only circumstance upon which the claim of the defendant in error can be supposed to rest, is, that the note was to go into bank for the benefit of the drawer; and this will not raise a contract, either express or by implication, different from that which is the known and established construction of such instruments. This is well known; and all who become parties to such contracts, are bound by the well established principles of law, operating upon them under such relations.

Mr Key, for the defendant, said, the question presented in this case is not novel. It has been frequently discussed in courts, and the position assumed for the defendant in error is founded in equity. It is claimed to divide the loss sustained by the failure of the drawer of the note between the indorsers. The bank had judgment against the indorsers. Magruder paid the whole amount of the execution against him, and proceedings on the execution against M'Donald were stayed, until this suit shall determine the rights of the parties.

In this case the note was made for the sole purpose of discount for the drawer, and the indorsers put their names upon it for that purpose only. As between the bank, there is no doubt the obligation of each was for the whole amount of the note; but between themselves it was not so. They united for the drawer, and they made no contract with each other for indemnity. The only contract was, that each should become one of two indorsers, for the benefit of the drawer, and that they would become mutual and equal sureties.

[M'Donald *vs.* Magruder.]

In other commercial contracts, the circumstances under which they arise are gone into. A bill of exchange drawn without funds in the hands of the drawer, is not subject to the strict rules of notice. So also where a note has been discounted for the use of the indorser. The bank of Columbia *vs.* French, 4 Cranch, 141. These cases show, that in actions on negotiable paper you may go beyond the form of the contract.

In the present case, the note was drawn, and after it was indorsed by Magruder, was handed back to Turner; it was then, at the request of Turner, indorsed by M'Donald, and was delivered to the bank by the drawer. Between the indorsers there was no contract, no consideration passed from the first to the second, and they stood as sureties between each other. Cited, 13 Johns. 52. 3 Harris & Johns. 125.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This is a writ of error to a judgment rendered by the circuit court of the United States, for the county of Washington, in the district of Columbia, in an action of indebitatus assumpsit, brought by the first indorser of a promissory note against the second indorser, to recover half its amount. The note was made by Samuel Turner, Jun. and indorsed George. B. Magruder, John G. M'Donald. At the trial of the cause a case was agreed by the parties, and the judgment of the circuit court was rendered in favour of the plaintiff on a verdict given by the jury, subject to the opinion of the court.

That a prior indorser is, in the regular course of business, liable to his indorsee, although that indorsee may have afterwards indorsed the same note, is unquestionable. When he takes up the note he becomes the holder as entirely as if he had never parted with it, and may sue the indorser for the amount. The first indorser undertakes that the maker shall pay the note; or that he, if due diligence be used, will pay it for him. This undertaking makes him responsible to every holder, and to every person whose name is on the note subsequent to his own, and who has been compelled to pay its amount.

This is the regular course of business where notes are indorsed for value: but it is contended that where less than the amount is received, the indorser is responsible to his immediate indorsee only for the sum actually paid; consequently, if nothing is paid, the mere indorsement does not bind the indorser to pay his immediate indorsee any thing. If B. indorses to C. the note of A. without value, and A. fails to take it up, it is as between B. and C. a contract without consideration, on which no action arises. This is undoubtedly true if C. retains the note in his own possession; and may be equally true if he indorses it for value. When he repays the money he has received, he is replaced in the situation in which he would have been had he never parted with the note. If he puts it into circulation on his own account, new relations may be created between himself and his immediate indorsee, which may be affected by circumstances. In the case under consideration, the note took the direction intended by all the parties. It was indorsed by Magruder for the purpose of enabling Turner to discount it at the bank. To insure this object, Turner applied to M'Donald, who placed his name also on the paper. No intercourse took place between the indorsers. No contract express or implied existed between them other than is created by their respective liabilities, produced by the act of indorsement. What are these liabilities? The first indorser gave his name to the maker of the note for the purpose of using it in order to raise the money mentioned on its face. He made himself responsible for the whole sum upon the sole credit of the maker. His undertaking is undivided. He does not understand that any person is to share this responsibility with him.

But either the bank is unwilling to discount the note on the credit of the maker and his single indorser, or the maker supposes his object will be insured by the additional credit given by another name. He presents the note therefore to M'Donald, and asks his name also. M'Donald accedes to his request, and puts his name on the instrument. If the maker passes the note for value, the liability of M'Donald to the holder is the same as if that value had been received

by M'Donald himself. Why is this? No consideration is received by M'Donald, and this fact is known to the holder and discounter of the note. But a consideration is paid by the holder to the maker, and paid on the credit of M'Donald's name. He cannot set up the want of a consideration received by himself; he is not permitted to say that the promise is made without consideration; because money paid by the promissee to another, is as valid a consideration as if paid to the promissor himself.

In what does the claim of the second on the first indorser differ from that of the holder on the second indorser? Neither has paid value to his immediate indorser; but the holder has paid value to the maker on the credit of all the names to the instrument. The second indorser, if he takes up the note, has paid value to the holder in virtue of the liability created by his indorsement. If this liability was founded equally on the credit of the maker and of the first indorser, if his undertaking on the credit of both subjects him to the loss consequent on the payment of the note; how can the contract between him and his immediate indorser be said to be without consideration?

If it be true, as we think it is, that Magruder, when he indorsed the note, and returned it to the maker to be discounted, made himself responsible for its amount on the failure of the maker, if this responsibility was then complete, how can it be diminished by the circumstance that M'Donald became a subsequent indorser? How can the legal liability of a first indorser to the second, who has been compelled to take up the note, be changed otherwise than by an express or implied contract between the parties?

This question has arisen and been decided in the courts of several states. Wood vs. Repold, 3 Harris & Johns. 125, was a bill drawn by A. Brown, Jun. at Baltimore, on Messrs Goold and Son of New York, in favour of G. Wood & Co., and indorsed by G. Wood & Co. and afterwards by Repold, the plaintiff. The bill was drawn and indorsed for the purpose of raising money for the drawer, and was discounted at the bank of Baltimore. On being protested for non-payment, it was taken up by Repold, and this suit brought against the

first indorser. Payment was resisted because the indorsement was, without consideration, for the accommodation of the drawer; but the court sustained the action. The same question arose in Brown vs. Mott, 7 Johns. 361, on a promissory note, and was decided in the same manner. In that case the court said, that if he had taken it up at a reduced price, it would seem that he could only recover the amount paid. Undoubtedly, if M'Donald had been compelled to pay a moiety of this note, he could have recovered only that moiety from Magruder.

The case of Douglass vs. Waddle, 1 Hammond, 413, was determined differently. This case was undoubtedly decided on general principles; but the custom of the country and a statute of the state are referred to by the court as entitled to considerable influence. The weight of authority as well as of usage is, we think in favour of the liability of the first indorser.

The claim of Magruder has also been maintained on the principle that they are co-sureties, and that he who has paid the whole note may demand contribution from the other.

The principle is unquestionably sound if the case can be brought within it. Co-sureties are bound to contribute equally to the debt they have jointly undertaken to pay; but the undertaking must be joint, not separate and successive. Magruder and M'Donald might have become joint indorsers. Their promise might have been a joint promise. In that event each would have been liable to the other for a moiety. But their promise is not joint. They have indorsed separately and successively, in the usual mode. No contract, no communication, has taken place between them which might vary the legal liabilities these indorsements are known to create. Those legal liabilities therefore remain in full force.

Upon this question of contribution, the counsel for the defendants in error rely on two cases, reported in 2 Bos. & Pull. 268 and 270. The first, Cowell vs. Edwards, was a suit by one surety on a bond against his co-surety for contribu-

tion. It was intimated by the court that each surety was liable for his aliquot part, but not liable at law to any contribution on account of the insolvency of some of the sureties. The party who had paid more than his just proportion of the debt could obtain relief in equity only.

The second case, Sir Edward Deering *vs.* The Earl of Winchelsea, Sir John Rous, and the Attorney General, was a suit in chancery, in the exchequer. Thomas Deering had been appointed receiver of fines, &c. and had given three bonds conditioned for faithful accounting, &c. In one of these the plaintiff was surety, in another lord Winchelsea, and in the third, sir John Rous. Judgment was obtained on the bond in which the plaintiff was surety, and this suit was brought against the sureties to the two other bonds for contribution. It was resisted on the ground that there was no contract between the parties, they having entered into special obligations. The lord chief baron was disposed to consider the right to contribution as founded rather on the equity of the parties than on contract, and the court decreed contribution.

In this case the parties were equally bound, were equally sureties for the same purpose, and were equally liable for the same debt. Neither had any claim upon the other superior to what that other had on him. The parties stood in the same relation, not only to the crown, to whom they were all responsible, and to the person for whom they were sureties, but to each other. Under these circumstances contribution may well be decreed *ex equali jure.* But, in the case at bar, the parties do not stand in the same relation to each other. The second indorser gives his name on the faith of the first indorser as well as of the maker. The first indorser gives his name on the faith of the maker only. Unquestionably these liabilities may be changed by contract; but no contract existing between these parties, it is not a case to which the principle of contribution applies.

No notice has been taken of the form of the action. It is admitted that Magruder, having paid the whole note,

[M'Donald vs. Magruder.]

may recover a moiety from M'Donald, if their undertaking is to be considered as joint; if he, as first indorser, is not responsible to M'Donald for any part of it which M'Donald may have paid.

The judgment is to be reversed, and the cause remanded, with directions to set aside the verdict, and enter judgment as on a nonsuit.